UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED
JUL 29 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MICHAEL ANTHONY NELSON,

   PLAINTIFF

v.

08cv4285
JUDGE SHADUR
MAG. JUDGE NOLAN

HARRIS TRUST AND SAVINGS BANK, N.A.
HARRIS, N.A.
DAVID J. CRAWFORD
MARY BIRON
HORACIO J. ISAIS
GLORIA BATES
BRANCH MANAGER AT HARRIS TRUST AND SAVINGS BANK CICERO, N.A.
UNKNOWN OWNERS + SHAREHOLDERS OF HARRIS TRUST AND SAVINGS BANK, N.A.

   DEFENDANT(S)

COMPLAINT

PLAINTIFF, SUES THE DEFENDANT(S) AND ALLEGES:

Rule 9(b), F. R. Civ. P. applies when fraudulent misrepresentations and omissions are made. Plaintiff must meet the "who, what, when and where" pleading requirements for fraud. Plaintiff further asserts the details of the alleged fraud is "peculiarly within the Defendant's knowledge or control," therefore Plaintiff cannot meet all the pleading requirements for fraud. United States ex rel. Robinson v. Northrop Corp., 149 F.R.D. 142 (N.D. Ill. 1993). The Defendants have exclusive possession of the evidence to clearly show the fraudulent misrepresentations and omissions made by the Defendants. Only through the discovery process will Plaintiff be able to meet his burden. Fed. R. Civ. P.(b), state the details of the defendants conducts are within the defendants exclusive possession and knowledge. Bell Enters Venture v. Santanna Natural Gas Corp., F. Supp. 2d, 2001 U.S. Dist. Lexis 23684 (N.D. Ill. Dec. 7, 2001).

Notwithstanding the above the Plaintiff asserts that, David J. Crawford, Assistant Vice President, Corporate Investigations for Harris Trust & Savings Bank, Horacio J. Isacs, Assistant Vice President, Corporate Investigations for Harris Trust & Savings Bank, Mary Biron, Vice President Corporate Security for Harris Trust & Savings Bank all located at 111 West Monroe, Chicago, Illinois, 60603 and Gloria Bates, Assistant Branch Manager for Harris Trust & Savings Bank and the Branch Manager for Harris Trust & Savings Bank all located at 2903 South Cicero Avenue in Cicero, Illinois all made fraudulent misrepresentations and omissions by communicating to the United States of America and the Federal Bureau of Investigations ("FBI") that the Plaintiff committed fraudulent activities against Harris Trust & Savings Bank, NA ("Harris Bank").

Specifically, Mr. David J. Crawford, Assistant Vice President, Corporate Investigations

for Harris Bank made a fraudulent misrepresentation and omission to the United States of America on April 30, 2007, by submitting the Financial Impact Statement Worksheet ("Worksheet") to the United States of America (Group Exhibit 2).

The Worksheet was then used in federal criminal Case No. 06 CR 0005 in the Northern District of Illinois, Eastern Division assigned to the Honorable Judge David H. Coar (E1; "E" refers to plaintiff exhibits attached to complaint). The alleged fraudulent misrepresentation made by Mr. Crawford was when he clearly stated the following "Harris N.A. incurred losses to three checking accounts due to fraudulent activities by Nelson." See Group Exhibit 2. Mr. Crawford made this fraudulent misrepresentation and omission under penalty of law, which Mr. Crawford personally signed on behalf of Harris Bank to be information true and correct to the best of his knowledge.

The factual peculiar information that is in the exclusive possession if the Defendant which will thoroughly prove the Plaintiff allegations which will also prove that the Defendant made a fraudulent misrepresentation and omission and committed fraud are as follows but not limited to the following:

a) All three business banking records for Account number 2910358445, Account Number 2910254941; and Account Number: 2910254933. Further description of the business banking records are named: Cano Publishing Company, Midwest Region – Expense Account, P.O. Box 389398, Chicago, IL 60654-9998, Account Number: 2910358445; Cano Publishing Company, Midwest Region Operating Account, 500 N. Michigan Ave, Suite 300, Chicago, IL, 60611, Account Number: 2910254941; and Cano Publishing Co, Midwest Region Payroll Account, 500 N. Michigan Ave, Suite 300, Chicago, IL 60611, Account Number 2910254933

In summary, Plaintiff has shown which individual made the fraudulent misrepresentation - Mr. David J. Crawford; when Mr. David J. Crawford made the fraudulent misrepresentation - April 20, 2007; To whom such fraudulent misrepresentation was made - United States of America. Plaintiff has shown how Mr. Crawford and the Defendants knowingly misrepresented the Worksheet with the intent that the United States of America would rely upon Mr. Crawford's fraudulent misrepresentation and wrongfully prosecute the Plaintiff. Resolution Trust Corp. v. S&K Chevrolet, 868 F. Supp. 1047 (C.D. Ill. 1994).

The United States of America ("USA") did rely upon Defendant's fraudulent misrepresentation and omission which is shown all throughout Criminal Case No. 06 CR 0005, numerous exhibits can be provided by the Plaintiff at trial. Plaintiff will now show what benefits the Defendants had to gain. As follows: Harris Bank would receive mandatory restitution upon successful prosecution by the USA, pursuant to 18 USC 3663 in the overall loss amount of $721,507.06 (E.3). Even though Harris Bank actual loss after recoveries was $233,419.41. Harris Bank would gain the benefits through the mandatory restitution payment by the Plaintiff, Harris Bank business insurance which provides for bank losses due to fraudulent activities, through their shareholders and/or directors among other things. See Servpro Indus., Inc. v. Schmidt, 905 F. Supp. 475 (N.D. Ill. 1995).

Plaintiff was damaged because of USA U.S.A. reliance on the false representations and omission by Defendants. Which is easily shown by Criminal Case No. 06 CR 0005, Northern District of Illinois, Eastern Division. The indictment, arrest, denial of bond, loss of liberty, cruel and unusual punishment,

4 of 12

UNDUE STRESS, HOSPITALIZATION, MEDICAL, EMOTIONAL, MENTAL AND PSYCHOLOGICAL TRAUMA AMONG OTHER THINGS. <u>FLOORCOVERINGS INT'L LTD. v. SWAN</u>, F. SUPP. 2d. 2000 U.S. DIST. LEXIS 5855 (N.D. Ill. Apr. 25, 2000)(THAT DEFENDANTS MADE SUCH REPRESENTATIONS WITH THE INTENT THAT PLAINTIFF IN CRIMINAL CASE NO. 06 CR 05 RELY ON THEM, PLAINTIFF IN CRIMINAL CASE NO. 06 CR 05 DID RELY ON DEFENDANT'S FALSE REPRESENTATIONS AND PLAINTIFF IN INSTANT CASE WAS DAMAGED AS A RESULT OF ITS RELIANCE.)

### REGARDING THE MULTIPLE DEFENDANTS

WHEN A PLAINTIFF SUFFICIENTLY ALLEGED FRAUD BY THE ADDITIONAL DEFENDANTS, AS LONG AS THE PLAINTIFF DOES NOT IMPROPERLY LUMP THE DEFENDANTS TOGETHER BUT INSTEAD PROVIDE DATES, AND THE SUBSTANCE OF THE STATEMENTS, IT IS ENOUGH TO PROVIDE A LOCATION AND AS MUCH DETAIL AS POSSIBLE. <u>ZIC v. ITALIAN GOV'T TRAVEL OFFICE</u>, 149 F. SUPP. 2d 473, 2001 U.S. DIST LEXIS 8400 (N.D. Ill. 2001).

WHEN A PLAINTIFF ALLEGED FRAUD RULE 9(b), F.R.Civ.P. REQUIRES THAT THE CIRCUMSTANCES CONSTITUTING FRAUD BE PLEADED WITH PARTICULARITY, WHILE STATES OF MIND MAY BE PLEADED GENERALLY; HOWEVER, WHERE A TRANSACTION IS MORE COMPLEX, OR THE TRANSACTIONS ARE NUMEROUS AND TAKE PLACE OVER AN EXTENDED PERIOD OF TIME, LESS SPECIFICITY IS REQUIRED <u>Ambrosino v. Rodman+Renshaw, Inc</u>, 635 F. Supp. 968 (N.D. Ill. 1986).

AS WITH THE CASE AT BENCH. THE ADDITIONAL DEFENDANTS FRAUDULENT MISREPRESENTATIONS ARE COMPLEX, NUMEROUS, TAKE PLACE OVER AN EXTENDED PERIOD OF TIME AND THE DEFENDANTS HAVE EXCLUSIVE POSSESSION AND KNOWLEDGE OF THE ADDITIONAL

FRAUDULENT MISREPRESENTATIONS <u>Levine v. Prudential-Bache Properties, Inc.</u>, 855 F. Supp 924 (N.D. Ill. 1994)(The sufficiency of the pleaded link between defendants and the overall fraudulent scheme should be governed by liberal standard; where the plaintiffs made particular allegations as to how the scheme worked and made general allegations that the defendants knowingly participated in the scheme, Rule 8, F.R. Civ. P. and subsection (b) of Rule 9, F.R. Civ. P. did not require more, as the information that would permit a more individualized pleading would appear to lie in the exclusive possession of the defendants).

The defendants fraudulent misrepresentations start as early as January 2005 when various employees of Harris Bank contacted the FBI. Therefore the plaintiff cannot meet the heightened burden of fraud pleadings that require particularity, specificity and intent of the other defendants named by the plaintiff. Plaintiff can only meet his heightened burden through the discovery process.

Nevertheless, Plaintiff attaches pages of a sworn affidavit prepared by FBI, Special Agent, Mark A. Coleman on January 24, 2005 in Criminal Case 05 M 28, Northern District of Illinois, Eastern Division, which was attached to an Application and Affidavit for Search Warrant in Criminal Case No. 05 M 28, which was signed by Michael T. Mason, U.S. Magistrate Judge, which shows that the additional named Defendants have made additional fraudulent misrepresentations separate from Mr. David J. Crawford, Assistant Vice President for Harris Trust and Savings Bank (Group Exhibit 4).

Paragraph 8 of Group Exhibit 4 clearly shows that Harris Bank conducted

a preliminary investigation and provided information to the FBI in January 2005. Plaintiff will be able to thoroughly prove through the discovery process that Harris Bank made numerous fraudulent misrepresentations to the FBI with the intent that the United States of America would rely upon Harris Bank misrepresentations and wrongfully prosecute the Plaintiff. Harris Bank would receive mandatory restitution upon successful prosecution by the United States of America pursuant to 18 USC 3663 in the overall loss amount of 724,507.06 (E3). Harris Bank would gain the benefits through mandatory restitution payment by the Plaintiff, Harris Bank business insurance which provides for bank losses due to fraudulent activities among other things.

   Plaintiff can easily prove one of Harris Bank fraudulent misrepresentations without the discovery process which is as follows: Paragraph 10 of Group Exhibit 4 clearly states that "In or about January 2005, Harris Bank further informed the FBI that as part of its investigation it had investigated Nelson's criminal history and learned that Nelson had a federal warrant out for his arrest." The Plaintiff states as follows:
   1.) NCIC database records never show Harris Bank ever investigating the Plaintiff's criminal history. Anytime a criminal history background check is completed, NCIC records the name, address, time and date of the party requesting the criminal history report. Plaintiff will be able to present NCIC database records at request of the Court or at jury trial that never show Harris Bank name.
   2.) In order for Harris Bank to do a criminal history investigation Harris Bank would have needed the Plaintiff highly personal identification information. Which Harris Bank or none of the Defendants, Individual A or Individual B never had or knew who are listed in Group Exhibit 4, among other things.

There is no general prohibition against plaintiff bringing claims against parties whose specific identities are unknown; nevertheless, the pleadings must be sufficiently detailed so as to provide notice to opposing parties of the claims against them. Hastings v. Fidelity Mtg. Decisions Corp., 984 F. Supp. 600 (N.D. Ill. 1997). Plaintiff in a federal suit need not plead facts; conclusions may be pleaded as long as the defendant has at least minimal notice of the claim. Freeman v. Godinez, 996 F. Supp 822 (N.D. Ill. 1998). Additional details regarding the multiple details are as follows, which outline various fraudulent misrepresents and omissions by the defendants: As follows:

A) Mr. Crawford contacted Alejandro Zamora in December 2004 on numerous occassions prior to contacting the FBI in January 2005 informing Mr. Alejandro Zamora of his responsibility to repay Harris Bank. When Alejandro Zamora and Cano Publishing Company retained the law firm of Goldstein & Bauer located in Chicago, Illinois to represent them in December 2004 in developing a repayment plan to satisfy the debit balances in the business checking accounts at Harris Bank. Mr. Crawford, Gloria Bates and the Branch Manager at Harris Bank clearly informed Mr. Alejandro Zamora if his sole responsibility to repay Harris Bank because of the fraudulent activities reported in the three business checking accounts he opened at Harris Bank. Mr. Crawford, Gloria Bates and the Branch Manager clearly knew all checks deposited into the three business checking accounts belonged to Alejandro Zamora. Mr. Crawford, Gloria Bates and the Branch Manager knew all checks deposited into the three business checking accounts during the period of October 28, 2004, through approximately December 20, 2004 at Harris Bank had Alejandro Zamora endorsement for payment not the Plaintiff. Mr. Crawford, Gloria Bates, Mary Biron, Horacio J. Isais and the Branch Manager knew all the third party checks written to third parties had Mr. Alejandro Zamora signature and endorsement and not the Plaintiff.

B.) Mr. Crawford, Gloria Bates, Mary Bivon, Horacio J. Isais and the Branch Manager knew all electronic transfers would only be completed by Alejandro Zamora and not the Plaintiff. Each Defendant had full knowledge of the above.

Nevertheless, on March 17, 2005 both Gloria Bates, Assistant Branch Manager, at Harris Bank at 2903 South Cicero Avenue in Cicero, Illinois and David Crawford participated in a telephone conference with FBI, Special Agent, Mark A. Coleman and provided the FBI with fraudulent misrepresentations and omissions. Horacio J. Isais, Assistant Vice President of Corporate Investigations for Harris Bank provided the FBI with a fraudulent misrepresentation and omission on March 29, 2005 via telephone.

Gloria Bates and Horacio J. Isais met with FBI, Special Agent, Mark A. Coleman at 111 West Monroe Street in Chicago, Illinois on March 31, 2005 and provided a fraudulent misrepresentation and omission to Agent Coleman where Gloria Bates stated she could identify the individual who she knew as Anthony Zamora who was associated with a former Harris Bank Account Holder, Cano Publishing.

All defendants had full knowledge and intent that their fraudulent misrepresentations and omissions would be relied upon by both the FBI and United States of America; who would then rely upon the fraudulent misrepresentations and omissions made by the Defendants and wrongfully prosecute the Plaintiff. <u>Resolution Trust Corp v. S+K Chevrolet</u>, 868 F. Supp. 1047 (C.D. Ill. 1994). The additional details of the Defendants fraudulent misrepresentations are, complex, numerous, take place over an extended period of time and the defendants have exclusive possession and knowledge of the additional fraudulent misrepresentations. <u>Levine v. Prudential-Bache Properties, Inc.</u>, 855 F. Supp. 924 (N.D. Ill. 1994).

## CLAIM OF RELIEF

The Plaintiff claim of relief is fraud. No claim for relief is stated if the complaint pleads facts insufficient to show that a legal wrong has been committed an averment necessary to establish the wrongs or falls so to link the parties with the wrong as to entitle the plaintiff to redress. <u>Sutton v. Eastern Viavi Co.</u>, 138 F.2d 959 (7th Cir. 1943)

Federal complaints plead claims rather than facts. Details come later, usually after discovery - though occasionally sooner if, as the rules allow, either side seeks summary judgment in advance of discovery. See Fed. R. Civ. P. 12(c). Although the rule does not require detailed factual pleading, a plaintiff's assertions must still direct the defendant to the factual cause of the plaintiff's alleged injury. <u>Baio v. 520 S. Mich. Ave. Assocs.</u>, 78 F. Supp. 2d 748 (N.D. Ill. 1999).

Where a plaintiff's complaint adequately describes the specific injury plaintiff sought to redress and described the legal theories upon which it based its claims, thus the complaint pleaded sufficient facts to allow defendant to prepare an effective answer or defense. <u>Wieboldt Stores v. Schottenstein</u>, 94 Bankr. 488 (N.D. Ill. 1988).

Where a plaintiff gave sufficient detail as to the participants and occurrences that went to make up alleged fraud, a detailed calculation of the damages alleged to have been incurred by the plaintiff was not necessary to give the defendant notice; because Plaintiff has met their burden of pleading damages under Rule 8, and damage calculations are not necessary to give defendant notice of the fraud charged, plaintiff also has met his burden of pleading under Rule 9(b), Supreme Court Rules. <u>Williams v. Sabin</u>, 884 F. Supp. 294 (N.D. Ill. 1995)

The Plaintiff will seek damages in the amount of one billion dollars against all Defendants. Under the notice pleading regime of subdivision 8(a)(2), a plaintiff is within his rights to wait until filing of his memorandum in response to a defendant's possible motion for summary judgment before setting out [a]ll legal theories on which the plaintiff wished to proceed in this action and any judgment would not be appropriate because plaintiff did not include some of his theories in the complaint. Humphrey v. Demitro, 931 F. Supp. 571 (N.D. Ill. 1996)

### DOCUMENTS ATTACHED TO THE COMPLAINT AND MATTERS OF PUBLIC RECORD

The Court can consider documents attached to the complaint along with the allegations made in the complaint. Katun Corporation v. Clarke, 484 F.3d 972 (7th Cir. 2007). A court may take into account matters of public record referenced in the complaint. Katun Corporation v. Clarke, 484 F.3d 972 (7th Cir. 2007). The documents attached to the complaint by the plaintiff are not redundant, immaterial, impertinent or scandalous matter. Fed. R. Civ. P. 12(f); see Kolupa v. Roselle Park District, slip opinion No. 05-2925, page 6 (7th Cir. 2006)(decided on February 10, 2006). Papers attached to a complaint do not have to satisfy the requirements for evidence as at a summary-judgment stage. Id.

### PRO SE LITIGANTS + JURISDICTION

Pro se litigant filing should be examined under a more liberal standard than pleadings drafted by an attorney. Dumas v. Chicago Hous. Auth., 930 F. Supp. 1238 (N.D. Ill. 1996). It is not essential that complaint set forth statutory basis for Court's jurisdiction in order for Court to assume jurisdiction if facts alleged provide a basis for assumption of

11 of 12

JURISDICTION: <u>Carlson v. Attorney Registration + Disciplinary Comm'n of Supreme Court</u>, 202 Bankr. 946 (Bankr. N.D. Ill. 1996).

WHEREFORE, PLAINTIFF REQUESTS ENTRY OF JUDGMENT OF ONE BILLION DOLLARS AGAINST THE DEFENDANTS, FOR THE DAMAGES, FRAUDULENT MISREPRESENTATIONS AND OMISSIONS MADE BY THE DEFENDANTS. SUCH OTHER AND FURTHER RELIEF AS THE COURT DEEMS JUST.

RESPECTFULLY SUBMITTED,
MICHAEL A. NELSON

BY: *[signature]*
Michael A. Nelson, Plaintiff
Jerome Combs Detention Center
3050 Justice Way
Inmate # 398001
Kankakee, IL 60901

NELSON, Michael
Docket No. 06 CR 5-1

| | |
|---|---|
| 314 | The government's version reflects that Harris Bank suffered an actual loss of |
| 315 | $233,414.91 and an intended loss of $735,000. A victim financial impact statement |
| 316 | worksheet completed by David J. Crawford, Assistant Vice President, Corporate |
| 317 | Investigations at Harris Bank indicates that the bank suffered a loss of $233,419.41. |
| | |
| 318 | The defendant admits that between October 29, 2004, and December 20, 2004, he |
| 319 | deposited or caused to be deposited a total of $735,000 (intended loss) into Harris |
| 320 | bank accounts. According to the government's version, all five convenience checks |
| 321 | deposited into Harris accounts were returned non-sufficient funds within |
| 322 | approximately one week of each check deposit. The defendant deposited checks |
| 323 | ranging from $35,000 to $350,000 knowing that the convenience checks were linked |
| 324 | to a credit card with a credit limit of $1,500. Due to the fact that the defendant could |
| 325 | only truly obtain $1,500 from the deposited convenience checks, the undersigned is |
| 326 | reducing this amount from $735,000 resulting in an intended loss amount of |
| 327 | $733,500. |
| | |
| 328 | The government informed the undersigned during a telephone conversation on or |
| 329 | about December 3, 2007, that Harris Bank, at the very latest, was aware of the |
| 330 | fraudulent check deposits when the $350,000 check deposit was made on November |
| 331 | 29, 2004. It appears that the defendant did not pay any monies back to Harris Bank |
| 332 | until December 2004. Therefore, any payments made towards the intended loss |
| 333 | amount should be not credited against the loss calculation. Based on the above |
| 334 | information, an intended loss amount of $733,500 is an appropriate amount to be |
| 335 | used in determining the total loss to Harris Bank. |
| | |
| 336 | With respect to Wachovia Bank, the government argues that the actual and intended |
| 337 | loss amounts are $5,092.15 and $85,000, respectively. As stated in the Offense |
| 338 | Conduct section, the defendant believes he should not be held accountable for |
| 339 | $30,000 of the intended loss amount of $85,000. It therefore appears that the |
| 340 | defendant concedes to the inclusion of at least $55,000 in the loss calculation. With |
| 341 | respect to the remaining $30,000, it is the assessment of the undersigned that this |
| 342 | amount be included in the loss calculation. The $30,000 appears to originate from |
| 343 | a Harris Expense Account check. |
| | |
| 344 | The defendant argues that he does not recall committing a check-kiting scheme at |
| 345 | Wachovia Bank and that his modus operandi in committing such a scheme is to |
| 346 | deposit a Union Plus convenience check. It is noted that the Harris bank accounts |
| 347 | were essentially funded by convenience checks that did not have a sufficient line of |
| 348 | credit to make the funds legitimately available. Therefore, it should not matter that |
| 349 | the $30,000 deposit was not made with a Union Plus convenience check. The |

*Exhibit 1*

# FINANCIAL IMPACT STATEMENT WORKSHEET

Your Name: _DAVID J. CRAWFORD - AVP - HARRIS N.A._

Defendant's Name: _MICHAEL NELSON_

Case Name: _UNITED STATES V. MICHAEL NELSON_

Case Number: _2005 R 00049     (06 CR 0005)_

Please use this portion of the form to list any expenses you have had or paid as a result of this crime. Some of the sections may not apply to you. If possible, please attach copies of bills, receipts, estimates of value, replacement costs, or other evidence of the costs listed below. Please attach additional pages as necessary.

A. **Crime Related Costs**

1. List any personal belongings or personal property lost, destroyed or damaged as a result of this crime and the value. This would include damage to your home, business or other real estate. (Examples of losses are: loss or damage to personal belongings such as televisions, clothing, jewelry, and automobiles. You also may wish to include expenses for installing deadbolts, repairing locks, and/or any crime scene cleanup.)

   $ _____
   $ _____
   $ _____

2. List any medical expenses incurred as a result of this crime. (You may wish to include expenses for doctors, medications, hospital stays, physical or occupational therapy, counseling, medical supplies, wheelchair rental, glasses, hearing aids, etc.)

   $ _____
   $ _____
   $ _____

3. Please describe any future medical or counseling expenses your doctor or therapist anticipates and attach an estimate of their costs.

   $ _____
   $ _____
   $ _____

*Group Exhibit 2*

2.  Have you applied for Crime Victim Compensation benefits? Yes___ No_✓_

  If you received any compensation as a result of your claim, please list the amount.

  $ _____

*   If you have not filed for Crime Victim Compensation benefits and would like to receive further information on requirements for filing a claim, please contact:

Total Money Received from Insurance, Crime Victim Compensation and Other Sources:

  $ _____

Please write any additional information you would like the judge to know about the money this crime has cost you.

HARRIS N.A. INCURRED LOSSES TO THREE CHECKING ACCOUNTS DUE TO FRAUDULENT ACTIVITIES BY NELSON. TOTAL LOSS BEFORE RECOVERIES WAS $353,419.41. AMOUNT RECOVERED = $120,000.00. FINAL LOSS EQUALS $233,419.41. NELSON HAS SINCE REPAID $75.00 SINCE FINAL LOSS CALCULATED.

I declare under penalty of law that the above information is true correct to the best of my knowledge.

Date  4/20/07        Signature  David J. Crawford

AVP
CORPORATE INVESTIGATIONS
HARRIS N.A.
(312) 461-3561

Group Exhibit 2

3

31

NELSON, Michael
Docket No. 06 CR 5-1

| | |
|---|---|
| 873 | Pursuant to 18 U.S.C. §3612(f)(1), interest shall be paid on any fine or restitution of more than $2,500 |
| 874 | unless the fine is paid in full before the fifteenth day after the judgment. Pursuant to 18 U.S.C. |
| 875 | §3612(f)(3), if the Court finds that the defendant does not have the ability to pay interest under this |
| 876 | subsection, the Court may waive the requirement for interest; limit the total of interest payable to a |
| 877 | specific dollar amount; or limit the length of the period during which interest accrues. |
| 878 | **Guideline Provisions:** The fine range for the instant offense is from $15,000 to $5,000,000, pursuant |
| 879 | to U.S.S.G. §5E1.2(c)(4). |
| 880 | Subject to the defendant's ability to pay, the Court may include in the fine an amount that is at least |
| 881 | sufficient to pay the cost to the government of any imprisonment, probation, or supervised release, |
| 882 | pursuant to U.S.S.G. §5E1.2(d)(7). The most recent advisory from the Administrative Office of the |
| 883 | United States Courts suggests a monthly cost of $2,036.92 to be used for imprisonment, a monthly |
| 884 | cost of $1,799.04 for community confinement, and a monthly cost of $294.60 for supervision. |
| 885 | <u>Restitution</u> |
| 886 | **Statutory Provisions:** Pursuant to 18 U.S.C. §3663, restitution shall be ordered in this case. |
| 887 | Restitution in the total amount of $721,507.06 is outstanding. According to the government, |
| 888 | $233,414.91 is owed to Harris Trust and Savings. Payments may be forwarded to the attention of |
| 889 | Mary Biron, Vice President of Corporate Security at 111 West Monroe Street, Room 11C, Chicago, |
| 890 | Illinois 60603. |
| 891 | Wachovia Bank is owed $5,092.15. Payments for Wachovia Bank may be sent to the attention of |
| 892 | Terry Huske, NC-37142, 100 North Main Street, Winston-Salem, North Carolina 27120. |
| 893 | Home of Life Missionary Baptist Church is owed $108,000. Payments may be forwarded to 4650 |
| 894 | West Madison Street, Chicago, Illinois 60644. |
| 895 | Greater Garfield Park Missionary Baptist Church is owed $337,500. Payments may be forwarded to |
| 896 | 2140 North Richmond Street in Chicago, Illinois 60647. |
| 897 | New Life Christian Fellowship is owed $37,500. Payments may be forwarded to 308 Midland |
| 898 | Avenue, Joliet, Illinois 60435. |
| 899 | **Guideline Provisions:** In accordance with the provisions of U.S.S.G. §5E1.1, restitution shall be |
| 900 | ordered. |

*Exhibit 3*

| Check One | Check Two | Check Three |
|---|---|---|
| Payor: Entity A | Payor: Entity B | Payor: Entity B |
| Payee: Cano Company | Payee: Cano Financial | Payee: Cano Financial |
| Amount: $20,000 | Amount: $60,000 | Amount: $40,000 |

8. In or about January 2005, Harris Bank further stated to the FBI that it had conducted a preliminary investigation into Cano and the bad checks that were deposited into Cano's bank account. Specifically, Harris Bank interviewed Individual A and Individual B, a former high level employee at Cano. Harris Bank stated that through its investigation, it had learned the following information:

Individual A was involved in a romantic relationship with a person Individual A knew as Anthony Nelson and is now known to be Michael Anthony Nelson. Individual A and Nelson started Cano Publishing, the primary business of which is to assist start-up companies with marketing services. Cano has addresses in Chicago, Atlanta, New York and, possibly, Los Angeles.

In or about October 2004, Nelson traveled to Atlanta, Georgia purportedly to conduct Cano business. Prior to Nelson leaving for Atlanta, Individual A provided Nelson with a few convenience checks Individual A had received from his credit card company. Individual A had informed Nelson that the maximum limit on Individual A's credit card was $2,000. Cano's business address in Atlanta, Georgia was 2215 Cheshire Bridge Road, N.E., Atlanta, Georgia 30324.

Harris Bank further stated that it had shown Individual A the bad checks that were deposited into Cano's bank account. Individual A identified the checks as the checks he had given to Nelson. Individual A further stated that he did not place the signature stamp on the checks. Individual A stated that prior to Nelson leaving for Atlanta, Georgia, Individual A provided Nelson with his



Group Exhibit 4

Nelson                                                                  00146

signature stamp.

9. Based on documents produced by Harris Bank and a review of Cano's Internet web site, FBI agents have learned that Cano is also known as Cano Publishing Company, Cano Consulting, Cano Financial, Cano Newsroom, Cano Publishing Group and Cano Music.

10. In or about January 2005, Harris Bank further informed the FBI that as part of its investigation it had investigated Nelson's criminal history and learned that Nelson had a federal warrant out for his arrest. Harris Bank further stated that through a detective in Orlando, Florida, it had confirmed that the person with whom Individual A was in a romantic relationship and to whom Individual A had given his convenience checks was Michael Anthony Nelson. Harris Bank stated that it received this confirmation after Harris Bank sent the detective a photograph of Nelson that it had received from Individual B.

Harris Bank further stated that upon confirming that Nelson had a federal warrant out for his arrest, it contacted the United States Marshal's Service ("USMS") and informed it that Nelson may be in Atlanta, Georgia. Harris Bank then provided the USMS with Cano's business address of 2215 Cheshire Bridge Road, N.E., Atlanta, Georgia 30324.

11. According to Harris Bank, Nelson was arrested at Individual D's apartment by the USMS during the early morning on January 14, 2005. Harris Bank informed the FBI that it had learned this information from Individual C, an employee of Cano.

12. During the afternoon of January 14, 2005, after Nelson's arrest, the FBI in Chicago, Illinois made contact with Individual C. Individual C informed the FBI that he was the executive assistant to Nelson and that Nelson had failed to give him his last few paychecks. Individual C stated that Cano's primary business was business consulting.

Group Exhibit 4